SOUTHERN FARMERS ASSN. INC. *v.* WHITFIELD.

5-3359 383 S. W. 2d 506

Opinion Delivered November 9, 1964.

*Edgar R. Thompson,* for appellant.

*Fred A. Newth, Jr.,* for appellee.

SAM ROBINSON, Associate Justice. This is an appeal from a judgment for the plaintiff in a malicious prosecution action. The appellant, Southern Farmers Association, Inc., sells gasoline at wholesale. Appellant Shaw Wilson is apparently manager of that company; there is no contention that he was not acting within the scope of his authority in the action he took in this matter.

Appellee, G. W. Whitfield, operated a filling station; he bought gasoline from Southern Farmers. Along about 1958 he had become indebted to Southern Farmers for an amount between $7,000 and $8,000. Southern Farmers cut off his regular credit and thereafter sold him gasoline on a plan whereby a tank of gasoline, amounting to something over $1,400, would be delivered to him and he would give his check for it, although he would not have sufficient money in the bank to cover the check. Southern Farmers was fully aware of that fact, and would hold the check until Whitfield had sold enough of the gasoline to deposit in the bank sufficient funds to make good the check held by Southern Farmers. This method of operation was carried on for several years.

Finally, on July 13, 1962, Whitfield gave to Southern Farmers a check in the sum of $1, 480.66 in payment of a load of gasoline. Southern Farmers ran the check through the bank the first time about 10 days later, on July 23, and twice thereafter; there never was sufficient money in the bank to cover the check.

On September 25, 1962, appellant, Shaw Wilson, acting in his capacity as agent for Southern Farmers, along with the attorney for the company, appeared before Virginia Ham, Deputy Prosecuting Attorney in Pulaski County, and prevailed upon her to approve the issuance of a warrant of arrest for appellee, Whitfield, charging him with giving a bad check with the intent to cheat and defraud. Whitfield was arrested. A hearing was conducted in the Little Rock Municipal Court. At the time of the hearing, the case was passed indefinitely by the court with a notation that it was to be dismissed if not tried by October 19, 1962.

Nothing further was done about the case, and about a year later Whitfield filed this suit against Southern Farmers and Shaw Wilson for malicious prosecution. The cause was tried to a jury, resulting in a verdict and judgment for Whitfield in the sum of $1,000.00. Southern Farmers and Wilson have appealed.

Three points are argued. First it is contended that there has been no termination of the prosecution. This is a necessary requisite to an action for malicious prosecution. But, even if it could be said that the Municipal Court reached no decision in the case, the undisputed facts would support a finding by a jury that appellants had abandoned the prosecution and this is a sufficient termination of the action against the accused to form the basis of an action for malicious prosecution. The court said in *Twist* v. *Mullinix*, 126 Ark. 427, 190 S. W. 851: ''There was testimony from which the jury might have found that appellant Twist abandoned the criminal prosecution instituted by him against appellee before the justice of the peace. Such abandonment, as we have seen, constituted a legal termination of that prose-

cution." See also *Winkler* v. *Lenoir & Blowing Rock Lines,* 143 S. E. 213.

Next, appellants contend that a full disclosure of all pertinent facts was made to the attorney for appellants and also to the Deputy Prosecuting Attorney, and that appellants acted on their advice. If the record supported this contention it would constitute a valid defense to a suit for malicious prosecution. *Jennings Motors* v. *Burchfield,* 182 Ark. 1047, 34 S. W. 2d 455. Here, however, the record does not bear out the assertion that Wilson disclosed all the facts to the attorney for Southern Farmers and to the Prosecuting Attorney. Mrs. Ham, the Deputy Prosecuting Attorney, when asked whether either Mr. Wilson or his attorney had told her that it had been a policy of the Southern Farmers to hold the checks and let Whitfield pay them off as he sold the gasoline, testified: "A: No sir. Not to my recollection they did not. Q: They didn't relate those facts to you? A: No sir."

The attorney for Southern Farmers testified: "Q: In other words you know that Mr. Shaw Wilson knew no money was in the bank? A: I did not know that."

A great preponderance of the evidence shows that Mr. Wilson did know that the money was not in the bank to cover the check at the time he accepted it, and that it had been his practice to accept checks on the same basis for about five years. If Wilson had made the full disclosure that he had been regularly accepting Whitfield's checks over a period of about five years when he knew that the checks were not good at the time he accepted them, and knew the same thing about the particular check involved here, perhaps the warrant for Whitfield's arrest would not have been issued.

Affirmed.